LANGSTON v. SMYLEY.

1. MARRIED WOMEN—ALIENATION.—The absolute power of alienation of her own property given to a married woman by the Constitution is not affected by the statutes which limit her powers of contract.

2. IBID.—IBID.—ASSIGNMENT.—This constitutional right of alienation is not a contract within the meaning of these limiting statutes; and an assignment of a married woman's bond and mortgage, made by her on the consideration of further indulgence to her son, and to assist in paying his debt, is a valid alienation of her property, and passes a good title to her assignee.

Before ALDRICH, J., Edgefield, November, 1891.

This was an action by Langston & Woodson, assignees, against A. J. Smyley, E. B. Smyley, *et al.*, commenced in May, 1891.

*Messrs. Sheppard Bros.*, for appellant.

*Messrs. Gary & Evans*, contra.

December 20, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to foreclose a

mortgage under the following circumstances: J. M. Smyley & Bro. was a mercantile firm at the town of Johnston, Edgefield County. The partners were J. M. Smyley and his brother, St. Julian Smyley. On September 10, 1889, St. Julian Smyley executed his individual note for $1,200 to his father, A. J. Smyley, who, in a few days thereafter, transferred the note to Mrs. E. B. Smyley, his wife and the mother of the debtor, St. Julian, who, in order to secure the same to his mother, executed to her a mortgage of his house and lot in the town of Johnston, which, as it seems, had been previously mortgaged to one J. S. Cartledge, to secure another debt of $600. The firm of J. M. Smyley & Bro. became embarrassed, and, among others, was indebted to the plaintiffs for goods sold and delivered to them, for which a note had been given. The partner, St. Julian, died intestate and unmarried, leaving as his heirs at law his father, A. J. Smyley, and his brothers and sisters named in the complaint. ·

When the indebtedness of the Smyley firm to the plaintiffs became due, the surviving partner, J. M. Smyley, could not pay it. The plaintiffs threatened to commence legal proceedings to enforce their demands against the surviving partner, J. M. Smyley; and in order to secure them in the payment of their just demands, and to stay their proceedings in court, he (J. M. Smyley), the surviving partner, prevailed upon and induced his mother, the defendant, E. B. Smyley, to transfer and assign to Langston & Woodson the note and mortgage aforesaid, and accordingly she did transfer and assign the same to plaintiffs, as stated in paragraph six of the complaint, plaintiffs' claim against the firm of Smyley & Bro. being paid to the extent of their recovery in this action, &c. The assignment referred to in paragraph six of the complaint was as follows: "For value received, I hereby assign, transfer, and set over to Langston & Woodson, and to their heirs and assigns, the within mortgage and the note for $1,200, dated September 10, 1889, given by St. Julian Smyley, and payable to A. J. Smyley or order, and by the said A. J. Smyley transferred to me on October 10, 1889, said mortgage having been given to secure said note. Given under my hand and seal, this February 18, 1890.

(Signed) E. B. Smyley. [L. S.]" Mrs. E. B. Smyley was made a defendant, and she answered, among other things, "That said assignment was without any consideration whatever to her; nor did the same in any manner concern the separate estate of her (this defendant), but, on the contrary, was for collateral or additional security, to secure the payment of a debt which had been previously contracted by the defendant, J. M. Smyley, with the plaintiffs herein. And that said assignment is without consideration, and null and void," &c.

The cause came on to be tried by his honor, James Aldrich, who found, as matter of fact, that the defendant, E. B. Smyley, was a married woman at the time of the execution of the assignment set up by the plaintiffs, and the said bond and mortgage were assigned to plaintiffs as collateral security for a debt of her sons, J. M. Smyley & Bro., and for a stay of threatened proceedings on the part of Langston & Woodson in court to enforce an indebtedness due by J. M. Smyley & Bro. to plaintiffs, Langston & Woodson. He further found that the assignment was not an "alienation," but simply given as security for the purpose above mentioned; and, therefore, the judge concluded, as matter of law, that Mrs. E. B. Smyley being a married woman at the time said assignment was executed, and the transaction not being with reference to her estate or concerning the same, that the said assignment is null and void as to the defendant, E. B. Smyley. The judge further ordered, that the mortgaged land should be sold, and the first lien of Cartledge paid; and that out of the proceeds of the purchase money which might remain, the master should pay (not to the plaintiffs, but to Mrs. E. B. Smiley) the amount due upon the note assigned by her to the plaintiffs, &c.

From this decree the plaintiffs appeal, upon the following grounds: "I. Because his honor erred in holding that the assignment of the mortgage by the defendant, E. B. Smyley, to the plaintiffs herein, as stated in the complaint, was not an 'alienation' thereof, and that said assignment is null and void as to the defendant, E. B. Smyley. II. Because his honor erred in holding that the sum of $1,385.50 is due E. B. Smyley on the mortgage sued upon in the complaint herein. III. Be-

cause his honor erred in not holding that the endorsement by the defendant, E. B. Smyley, upon the note described in the complaint, to wit, 'pay to the order of Langston & Woodson,' which endorsement was accompanied by the delivery of the possession thereof, *vested* the ownership of said note, and of the mortgage given to secure the same, in the plaintiffs. IV. Because his honor erred in not holding that the assignment of the mortgage was payment of the claim of plaintiffs against Smyley Bros. to the extent of the difference between the senior mortgage and the value of the mortgaged property. V. Because his honor erred in not holding that the defendant, E. B. Smyley, is estopped from questioning the validity of the assignment."

This case presents another phase of the difficult and perplexed question as to the rights of married women. So far is plain, that the Constitution, dispensing with the necessity of a trustee to hold the legal title, makes the rights of a married woman legal in character, instead of equitable, and protects it against the debts of the husband; but it does not protect her property against the control and absolute dominion of the married woman herself. As I understand it, a married woman, having actual possession of her separate property— personal property, such as a diamond ring or a mortgage deed— may do what she pleases with it—sell it, or give it away by will or otherwise, provided there is no fraud or misrepresentation in the matter. This power she has under the Constitution, and I know of no law or principle which gives to the courts anything like a general guardianship over her or her property, so as to authorize them to approve such of her acts as may be thought to be proper and prudent, and to declare void such as may be thought to be unwise or imprudent. A married woman, under the Constitution, has as much right to control, manage, and dispose of her property as if she were unmarried. As the Chief Justice well said in the late case of *Neal* v. *Bleckley:*[1] "The power of *alienation* conferred by the Constitution upon a married woman is without any limitation or qualification, such as that found in the statute as to her power to contract." See *Witsell* v. *Charleston*, 7 S. C., 88, and *Witte Brothers* v. *Clarke*, 17 *Id.*, 313.

[1] 36 S. C., 468.

It is urged, however, that under the act referred to, the power given to a married woman to contract and be contracted with is "as to her separate estate," and from this affirmative grant of the power there is a negative implication, that no power is given to her to contract, except as to her separate estate.   That is true.   This court has repeatedly so held; but is it true that every "alienation" necessarily involves *a contract*, which is inhibited by the aforesaid act of the legislature?  If so, the act would, in effect, expunge that provision of the Constitution.   Can it be said that in the assignment of the note and mortgage to the plaintiffs there was any *contract*, in the sense of the act aforesaid?  It does not appear that the plaintiffs ever met or had any negotiation with Mrs. Smyley. The surviving partner, J. M. Smyley, "in order to secure the plaintiffs in their demands, and to stay their proceedings in law, prevailed upon and induced his mother to transfer and assign to the plaintiffs the note and mortgage aforesaid, which was done under her hand and seal, and the papers delivered without reservation."  From the terms and expressed object of the assignment, we can not assume that it was executed merely as collateral security for, but rather as payment on, the debt of the plaintiffs against her sons, J. M. Smyley & Bro. It certainly was not an executory *contract*, but a complete and executed transaction, by the delivery of the property itself, "and the plaintiffs' claim against the firm of J. M. Smyley & Bro. being paid to the extent of the recovery in this action;" that is to say, as to what should be realized from the mortgage after the payment of the older mortgage of Cartledge.

As it strikes us, this was not the case of a married woman undertaking to bind herself or her property by a general personal engagement, or becoming surety for another, but an actual transfer of the property itself, for the purpose of securing indulgence to her sons, and of aiding them in the payment of their debt to the plaintiffs.   The elementary writers say, that "to alienate, is to pass property from one person to another."   That would seem to have been done here.   If Mrs. Smyley had received full money consideration for the note and mortgage, we can hardly suppose that her right to assign them

could have been drawn in question.   When the question is one simply *of power*, we can not clearly see how the character or amount of the consideration received should alter the case, or be considered as conclusive of the matter.

The judgment of this court is, that the judgment of the Circuit Court be reversed, in so far as it declares the assignment of the note and mortgage by Mrs. E. B. Smyley to the plaintiffs *void*, and *directs* the proceeds of the sale of the land applicable to the mortgage *to be paid to Mrs. E. B. Smyley*, instead of the plaintiffs, the assignees thereof; and that in all other respects the judgment be affirmed, and the case remanded to the Circuit Court for such further proceeding as may be necessary to carry out the conclusions herein announced.